ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

vs.

**RAY M. WHITE** and
**CRW MANAGEMENT, L.P.**

Defendants.

and

**CHRISTOPHER R. WHITE** and
**HURRICANE MOTORSPORTS, LLC**

Relief Defendants



Civil Action No.

**3-09CV0407-K**

### COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows against Defendants Ray M. White and CRW Management, L.P. (collectively, "Defendants"), and would respectfully show the Court as follows:

### SUMMARY

1. From at least April 2007 through the present, Defendants have engaged in a fraudulent "Ponzi" scheme, raising at least $10.9 million from at least 250 investors by promising profits from a purportedly lucrative foreign-currency trading program. On behalf of his company, CRW Management, L.P., Ray M. White has claimed to achieve returns as high as 8.1% per week for investors. These claims were false. Of the approximately $10.9 million he has received from investors, Ray White has used approximately $93,900 to trade in the foreign-currency market.

He has misappropriated and misapplied the rest, using these funds to finance his son Christopher R. White's car-racing career, to purchase a private company called Hurricane Motorsports, L.L.C, and to purchase a home and other real property, among other things. He has also used investor funds to make Ponzi payments—that is, he has made certain payments to investors, pretending that the payments were derived from profitable foreign-currency trades when, in fact, the payments were derived from investor funds.

2. By this conduct, Defendants have offered and sold securities in the form of investment contracts and have violated, and continue to violate, the securities-registration and anti-fraud provisions of the federal securities laws, specifically Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and of Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

3. The Commission, in the interest of protecting the public from further such fraudulent activities and harm, brings this action seeking to permanently enjoin the Defendants from further violations of the federal securities laws. The Commission further seeks orders requiring the Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon, and to pay civil monetary penalties as allowed by law. Moreover, the Commission seeks orders requiring Christopher R. White and Hurricane Motorsports, LLC, named herein as Relief Defendants, to disgorge their ill-gotten gains.

## JURISDICTION AND VENUE

4. The investments offered and sold by the Defendants are "securities" under Section 2(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c].

5.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Sections 21(d) 21(e) and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e) and 78(aa)].

6.      Defendants, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain of the transactions, acts, practices, and courses of business alleged herein took place in the Northern District of Texas.

## DEFENDANTS

7.      **CRW Management, L.P.** ("CRW") is a Texas-registered limited partnership located in Mansfield, Texas. Ray M. White is CRW's general partner and controls its operations.

8.      **Ray M. White** ("Ray White"), aged 50, resides in Mansfield, Texas. Ray White has never been registered with the Commission or with the Commodities Futures Trading Commission ("CFTC") in any capacity. Ray White has never been licensed to sell securities.

## RELIEF DEFENDANTS

9.      **Christopher R. White** ("Christopher White"), aged 22, resides in Mansfield, Texas, and is Defendant Ray White's son. Christopher White improperly received funds and assets as a

10.     **Hurricane Motorsports, L.L.C.** ("Hurricane Motorsports") is a Texas-registered limited liability company located in Arlington, Texas. Ray White and Christopher White co-manage Hurricane Motorsports, which is purportedly in the business of building and selling kit-based sports cars.

### The Defendants' Investment Scheme

11.     Since at least April 2007, Ray White and CRW have engaged in a fraudulent Ponzi

scheme, raising at least $10.9 million from approximately 250 investors in at least 22 states. Acting on behalf of his company, CRW, Ray White promised investors that their money would be pooled into a "fund" and that they would receive profits from a lucrative foreign-currency trading program that he operated through CRW. Ray White led investors to believe that his special expertise at trading foreign currencies—sometimes called "Forex" trading—would yield exceptional returns. He claimed to achieve returns from 6.3% to 8.1% per week. In reality, Ray White was not a successful foreign-currency trader, and he had no lucrative foreign-currency trading fund or program. Indeed, he filed bankruptcy in 2003 and in 2006, a fact he concealed from investors.

12. To participate in the program, Ray White required investors to fill out a one-page enrollment form, calling for their contact information and the amount of their investment. On the form, investors acknowledged "that this like any investment has risk" and that "[t]his fund is not insured or guaranteed, risk of lose (sic) of funds in possible." On Ray White's instruction, at least one investor completed a form entitled "Asset Management Agreement." This form represented that CRW "shall provide advice and services regarding the assets provided to invest in FOREX" and "will be responsible for investment into the FOREX market and Management of funds for personal growth."

13. Ray White and CRW charged some investors 10% of earnings and others 20% of earnings to participate in the program. On Ray White's instruction, investors sent their investment payments by check to Ray White or wired their investment payments to a CRW bank account controlled by Ray White.

14. In the scheme's early stages, Ray White sent certain investors account statements purporting to reflect the performance of their investments. The account statements showed that,

in some cases, investors were earning monthly returns over 30%. Ray White told the investors that he had generated these high returns by trading foreign currencies overnight. Impressed by the purported returns, some of these investors informed their friends and family members, some of whom subsequently invested with the Defendants. In reality, Ray White had simply fabricated the account statements, and the claims of high monthly returns were bogus. In this manner, Ray White enticed investors into the scheme through word-of-mouth referrals from existing investors.

15. As the scheme continued, Ray White periodically sent investors additional fictitious account statements. For example, Ray White sent one investor a monthly statement dated October 6, 2008, reflecting that, from May 2008, her investment of approximately $250,000 had grown to $435,000. In reality, her investment had not increased at all.

16. At the time of her investment, Ray White promised to pay this investor $5,000 per month from the profits generated in the foreign-currency program. Despite generating no profits, Ray White paid her $5,000 per month until December 2008. When the January 2009 payment failed to appear, the investor asked Ray White to return all of her funds. White emailed her on January 16, 2009, informing her that "her complete funds are being released into her [bank] today." In reality, the funds were not released into her bank, and she still has not received them.

17. The Defendants' enrollment form, Asset Management Agreement, and periodic statements, described above, all served to deceive investors into believing that the investment program was legitimate when, in fact, it was a fraudulent Ponzi scheme.

### The Defendants Misappropriated and Misapplied Investor Funds

18. Contrary to their promises regarding how they would use investor funds, Ray White and CRW have misappropriated and misapplied investor funds. In fact, of the approximately $10.9

million raised, they traded foreign currencies with approximately $93,900. These trades were ultimately unsuccessful, however, and the vast majority of the approximately $93,900 was lost.

19. Apart from the approximately $93,900 used to trade foreign currencies, the Defendants spent, transferred, and otherwise disposed of investor funds in a manner contrary to their investor promises. For example, the Defendants have made approximately $4.5 million in Ponzi payments to investors to create the illusion that their investments were profitable. Some investors received more money from the Defendants than they had invested with the Defendants. Most investors, however, received either no payments or payments amounting to less than their investments with the Defendants.

20. In addition, included in the Defendants' misappropriation and misapplication of investor funds are payments of at least the following amounts:

| | | |
|---|---|---|
| A. | Payments to Ray White: | $177,251.98 |
| B. | Purchase of Ray White's House: | $164,000.00 |
| C. | Purchase of Real Property near Tyler Texas: | $205,595.00 |
| D. | Payments to Christopher White: | $81,590.35 |
| E. | Purchase of Vehicle for Christopher White: | $59,062.29 |
| F. | Payments for Car-Racing Activities: | $431,660.31 |
| G. | Purchase of Other Vehicles: | $73,088.42 |
| H. | Payments for Hurricane Motorsports: | $127,000.00 |
| I. | Payments to Third Parties: | $3,472,661.70 |

RE: SEC v. Ray M. White, et al.
COMPLAINT

Page 6 of 12

**The Defendants Have Repeatedly Lied to Investors to Avoid Detection**

21. On November 24, 2008, Ray White sent an e-mail to some investors informing them that, as of December 1, 2008, CRW would cease the foreign-currency trading program. The e-mail stated that Ray White and CRW would distribute funds to investors between December 10 and 19, 2008. To date, this distribution has not occurred. In the email, Ray White falsely stated that CRW was ceasing operations because "Banking and Homeland Security procedure changes" had become "a very large obstacle to overcome and still provide the funding transfers in the time frame most clients feel is needed." Ray White further falsely stated in the email that investor funds were safe and that he had "always been conservative with your funds as well as the operation of business."

22. Since sending the above email, Ray White has given investors numerous other false excuses purporting to explain why the Defendants have not returned the funds. For example, he told investors that banking holidays were preventing the distribution, that a "legal group" was verifying accounts to determine the disbursements, and that Ray White had turned the funds over to an escrow agent who would contact all of the investors to return their funds. As recently as January 24, 2009, Ray White falsely told at least two investors that all investor money is safe and that they will all receive their money back.

**FIRST CLAIM**

**Violations of Section 17(a) of the Securities Act**

23. Plaintiff Commission repeats and incorporates paragraphs 1 through 22 of this Complaint by reference as if set forth *verbatim*.

24. The Defendants, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the

mails have: (a) employed devices, schemes, and artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operate or would operate as a fraud and deceit upon the purchasers.

25. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated, or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 22, above.

26. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged herein. With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

27. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].



## SECOND CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

28. Plaintiff Commission repeats and incorporates paragraphs 1 through 22 of this Complaint by reference as if set forth *verbatim*.

29. The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons.

30. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated, or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 22 above.

31. The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

32. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM

### Violations of Section 5(a) and 5(c) of the Securities Act

33. Plaintiff Commission repeats and incorporates paragraphs 1 through 22 of this Complaint by reference as if set forth *verbatim*.

34. Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling, and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

35. As described in paragraphs 1 through 22, the investments described herein have been offered and sold to the public. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

36. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

### I.

Permanently enjoin Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### II.

Order the Defendants to disgorge an amount equal to the funds and benefits obtained illegally as a result of the violations alleged, plus prejudgment interest on that amount.

### III.

Order the Defendants to pay civil monetary penalties in an amount determined as appropriate by the Court pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for the violations alleged herein.

### IV.

Order the Relief Defendants to disgorge an amount equal to the value of all illegally obtained funds, assets, and other benefits.

### V.

Order such further relief as this Court may deem just and proper.

Respectfully submitted,

DATED: March 4, 2009

*/s/ Timothy S. McCole*

TIMOTHY S. McCOLE
Mississippi Bar No. 10628
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6453
FAX: (817) 978-4927
E-mail: McColeT@SEC.gov

RE: SEC v. Ray M. White, et al.
COMPLAINT

Page 12 of 12

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS
UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**Defendants**
Ray M. White and CRW Management, LP and Christopher R. White and Hurricane Motorsports, LLC as Relief Defendants

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Tarrant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Timothy S. McCole
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Telephone: (817) 978-6453

RECEIVED MAR - 4 2009 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

ATTORNEYS (IF KNOWN)

3-09CV0407-K

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | **PROPERTY RIGHTS** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 371 Truth in Lending | | | ☒ 850 Securities Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | | ☐ 820 Copy rights | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | | ☐ 830 Patient | |
| ☐ 196 Franchise | | | ☐ 840 Trademark | ☐ 890 Other Statutory Actions |
| | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| | | | | ☐ 892 Economic Stabilization |
| | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 893 Environmental Matters |
| | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 894 Energy Allocation Act |
| | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 895 Freedom of Information Act |
| | | | ☐ 864 SSID Title XVI | |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | | |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION
CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause:
Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]; and Section 10(b) of the Securities Exchange Act of 1934, [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See Instructions):
U.S. Commodity Futures Trading Commission v. CRW Management LP and Ray M. White, defendants, Christopher R. White and Hurricane Motorsports, LLC, Relief Defendants
IF ANY          JUDGE _____          DOCKET NUMBER _____

DATE: March 4, 2009
SIGNATURE OF ATTORNEY OF RECORD: Timothy S. McCole

**FOR OFFICE USE ONLY**
Receipt # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____