ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 12 2011

CLERK, U.S. DISTRICT COURT
By _____
Deputy



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION, and US COMMODITY
FUTURES TRADING COMMISSION,

        Plaintiffs,        Civil Action # 3-09-cv-0407-K

    -v-

RAY M WHITE
CRW MANAGEMENT, L.P.,

        Defendants,

CHRISTOPHER R. WHITE,
HURRICANE MOTORSPORTS, LLC,

        Relief Defendants.

_____/

## RESPONSE TO MOTION FOR DISGORGEMENT

COME NOW HAROLD G. UHRIG and The Defense Group, PLC, named Respondents in the Receiver's Motion for Disgorgement, and with regard to the averments set out therein, would show as follows:

1. Admit

2. Admit

3. Admit

4. Admit

5. Admit

6. Without sufficient knowledge to admit and therefore generally deny.

7. Admit

8. The Receiver Order speaks for itself.

9. This is a legal assertion rather than a factual assertion and is therefore not susceptible to an admission or denial.

10. Admit

11. Without knowledge having not been afforded a copy of that suit or any responsive pleadings, and therefore deny.

12. Without knowledge and therefore deny.

13. Without knowledge and therefore deny.

14. Without knowledge and therefore generally deny.

15. Without knowledge and therefore generally deny. Specifically deny that Respondents were ever "rewarded for their efforts to bring more investors into the scheme."

16. Without knowledge and therefore generally deny.

17. Without knowledge and therefore generally deny.

18. From the attached items in the appendix the receivership records do seem to indicate that.

19. Admit that the table imbedded in the Motion provides a "summary" based on the Receiver's records.

20. In that the characterization of "false profits" requires a legal determination, this paragraph is generally denied.

21. In that the characterization of "false profits" requires a legal determination, this paragraph is generally denied.

**FURTHER RESPONSE AND MEMO IN OPPOSITION:**

22. Because neither Respondent ever "invested" or otherwise placed any funds in the possession or custody of the Defendants, they could not have received any "profits" (false or otherwise)

23. Because neither Respondent ever "invested" or otherwise placed any funds in the possession or custody of the Defendants, they never participated in the Defendants' activities, described in the suit and the Motion as a "PONZI Scheme."

24. Because the Respondents were never participants in the alleged PONZI Scheme, any funds received from the Defendants are as unrelated to the alleged PONZI scheme as funds paid by the Defendants for their light bill, or for Christmas presents to friends or employees.

25. The very definition of a PONZI Scheme is very different than the set of facts alleged by the Receiver.

    a. As acknowledged by the Receiver in Paragraph 6 is that the respondents herein are "unique in that they never actually invested any money with Ray White."

    b. The Respondents therefore were never participants in the alleged PONZI Scheme.

    c. The Receiver further alleges that it is the intent to "seek to recover" funds from Respondents under the Texas Uniform Fraudulent Transfer Act.

    d. The Texas Uniform Fraudulent Transfer Act is a state statutory scheme that provides for notice to the person or entity alleged to have been the transferee under fraudulent circumstances, as defined in the Act and the case law.

3

e.  The instant Motion appears to be an effort to use expedited and truncated summary procedures to collect funds that have not yet been the subject of a determination under that Act, together with the full Due Process afforded by that state Act.

f.  Paragraph 15 of the Motion describes how "White comingled each investor's contribution and spent the comingled funds for his own use."

g.  Clearly White never comingled ay of Respondents'' funds as he never received any of Respondents'' funds.

h.  The continued references such a "more investors" distinguishes the position of the Respondents herein from the position of others who were in fact participants in the scheme.

i.  Paragraph 18 continues in this theme with , "Receivership records indicate that, although Uhrig and The Defense Group never actually invested any money with ray White, White transferred money on their behalf." Clearly, Uhrig and The Defense Group may have received funds from accounts controlled by White, but this is not the same as to say that they were distributes of a PONZI Scheme in which they were early participants.

26. In Paragraph 22, the receiver asserts that "All of the transfers made for Uhrig's benefit or to the Defense Group are voidable under the Texas Uniform Fraudulent Transfer Act ("TUFTA") or supplemental provisions of common law.

a.  The determination of the actual intent to hinder, delay or defraud any creditor necessarily requires the invited participation of the transferee before the Court

4

(State or Federal) can reach a determination that the transferee must disgorge the allegedly fraudulently transferred assets.

b.  "Voidable" is not the same as "void" and a determination in favor of the SEC that White created and operated a PONZI scheme is not dispositive as to every expenditure made by White during that time period. The TUFTA may operate to create rebuttable presumptions in favor of such a determination, but it is not self executing and Due Process is not dispensed with.

c.  The alleged "automatically established" standard mentioned in Paragraph 23 of the receiver's Brief applies only to distributions to early participants in the PONZI scheme and the case law does not support the proposition that every dollar expended or distributed is necessarily encompassed by this presumption.

d.  This is again reinforced by the language quoted by the Receiver in Paragraph 24 that , This presumption is supported by the fact that a Ponzi scheme is insolvent from its inception" (citations omitted) and, "Accordingly, all payments from a Ponzi scheme **in excess of an investor's contribution** are presumed fraudulent and must be disgorged and returned to the receiver Estate." (citation omitted). Here there was no "investor's contribution" from which to begin the calculation.

27. The language in Paragraph while a correct statement of the law, starts from a legal position downstream from the required starting point. There must first be a factual/legal determination that the specific transfers to non participants in the alleged scheme were indeed "fraudulent transfers" and that judicial effort has not yet taken place and no stipulation of fact has yet been entered into or filed.

28. Paragraph 26 of the Brief continues to talk in terms of funds used to "satisfy obligations to earlier investors." Here the Respondents were not "earlier investors" and we have not been advised of any claimed "obligation" that CRW has towards the Respondents.

WHEREFORE, the Respondents herein assert that they stand in very different factual, legal and procedural shoes than actual participants in any alleged Ponzi Scheme and ask that the Court disallow the  Motion For Disgorgement filed by the Receiver herein.

THE DEFENSE GROUP, PLC
230 Lookout Place, Suite 100
Maitland, FL  32751
(407) 831-1956
Attorneys for Defendant
**Hal Uhrig, Esq. (Fla. Bar # 196256)**
Jad M. Brewer, Esq. (Fla. Bar # 657530)
Peter Zies, Esq. (Fla. Bar # 868116)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been delivered to Julian Vasek, Esq., ROCHELLE McCULLOUGH, LLP, 325 N. St. Paul Street, Suite 4500, Dallas, Texas 75201 by US Mail, this ___ day of October, 2011.

THE DEFENSE GROUP, PLC
230 Lookout Place, Suite 100
Maitland, FL  32751
(407) 831-1956
Attorneys for Defendant
**Hal Uhrig, Esq. (Fla. Bar # 196256)**
Jad M. Brewer, Esq. (Fla. Bar # 657530)
Peter Zies, Esq. (Fla. Bar # 868116)